UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLAUDETTE TSEHAYA D. SMITH,
Individually and as Personal Representative
of ESTATE OF MARY FITZ,

       Plaintiff,

v.                                                Case No. 11-cv-15411
                                                 Paul D. Borman
                                                 United States District Judge

ALLSTATE INSURANCE COMPANY

       Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. No. 22)

      This case involves Claudette Tsehaya D. Smith's ("Plaintiff") claims for breach of contract against Allstate Insurance Company ("Defendant"). Defendant removed the matter to this Court on December 9, 2011, based on diversity of citizenship. (Dkt. No. 1.) On December 6, 2012, Defendant filed a Motion for Summary Judgment. (Dkt. No. 22.) Plaintiff filed a response on January 9, 2013. (Dkt. No. 24.) Defendant filed a reply on February 5, 2013. (Dkt. No. 25.) The Court held a hearing on August 15, 2013. Plaintiff filed a supplemental brief on August 19, 2013. (Dkt. No. 26.) Defendant filed a supplemental brief in response on August 22, 2013. (Dkt. No. 27.)

      For the reasons stated below, the Court will GRANT Defendant's motion.

### I. BACKGROUND

      This case involves property located at 18038 Woodingham Drive in Detroit, Michigan (the "Property"). On December 15, 2010, a DTE Energy Company employee discovered water damage at the Property. A later investigation revealed that the water damage occurred after pipes running

1

to a second-floor bathroom had frozen and burst. Plaintiff, who claims that she lives at the Property, sought coverage for the water damage under a homeowner's insurance policy provided by Defendant. However, Plaintiff's mother, Mary Fitz, was the named insured on the policy. Because Mary Fitz died on December 13, 2007, approximately three years prior to the date of Plaintiff's claimed loss, Defendant denied Plaintiff's claim.

Plaintiff testified that she has lived at the Property since she was 14 years old, or for approximately 45 years prior to the December 15, 2010 incident. However, Plaintiff also has an extensive professional and personal life in Albany, New York. Plaintiff testified that she works at an "outreach center" in Albany and coordinates activities for a company called Hakun. When questioned at her deposition, Plaintiff did not specify how often she worked in Albany, but stated: "In the last four or five years there have been times that I haven't worked at all and there have been times I have been able to go to Italy for three days and come home. There [are] a myriad of opportunities that I have had, so I take them as they are presented to me." (Def.'s Mot. for Summ. J., Ex. D, Smith Dep. 26.) In addition to her work with Hakun, Plaintiff runs an alternatives to probation program in Albany called "Alternatives for Youth." Plaintiff further testified that she worked for the State of New York doing online tutoring for children in the Albany School District. Plaintiff stated, however, that she conducted the online tutoring from Detroit, Michigan. Plaintiff also has an ownership interest and is a board member of a nonprofit based out of Albany called Art Partners. Plaintiff testified that she lived in Albany with her daughter for a period of time, and that she was married to the Commissioner of Corrections for the State of New York.

Plaintiff claims that she "always received mail on Woodingham." (Smith Dep. 53.) However, when asked about her residences during her deposition, Plaintiff responded as follows:

2

> Q. When I say residences, somewhere you are going and getting mail and you are sleeping overnight?
>
> A. I didn't get mail at a residence, I got mail at a P.O. Box.

(Smith Dep. 6.)

Plaintiff stated that she uses a P.O. Box address in Albany, New York. Although Plaintiff's name is on the P.O. Box in Albany, Plaintiff testified that her daughter uses it to receive mail. Plaintiff testified that she "shares" the P.O. Box address in Albany with her daughter, but also stated that her daughter had a separate address in Albany where she receives mail.

Jenaa Moore has lived on Woodingham across from the Property for approximately 12 years. Moore testified that she first met Plaintiff "two or three years ago, maybe." (Def.'s Mot. for Summ. J., Ex. F, Moore Dep. 20.) During Moore's deposition, the following exchange took place:

> Q. Would it surprise you that -- we've already taken the deposition of Ms. Smith, and would it surprise you that during that deposition she indicated she had lived at that Woodingham address since she was 14 years old?
>
> . . . .
>
> A. Would it surprise me? Yeah. For the last 12 or 13 years, yes, that would surprise me. Since I've been there, it would surprise me.
>
> . . . .
>
> Q. Why would that surprise you?
>
> A. Because when you see your neighbors coming and going, you get familiar with who frequents the house. I just can't recall her living there prior to her mother's death. Now, it's possible because of how long she stays out of town at periods, it's possible, but I would be surprised, but I don't know.

(Moore Dep. 22-23.)

Although her car is registered in Albany, New York, Plaintiff has a Michigan driver's license indicating her residence as the Woodingham address in Detroit. As of December 2010, the utility bills for the Property in Detroit were listed in Plaintiff's name.

Plaintiff testified that she was at a funeral in Albany in December 2010, when the water damage to the Property occurred. At her deposition, Plaintiff could not recall the name of the deceased, only that it was for a friend of Plaintiff's daughter. Plaintiff learned about the problems at the Property when a DTE Energy employee called her and told her that he heard and saw water coming out the back of the Property, near her meter. After the DTE Energy employee called her, Plaintiff called Ms. Moore, her neighbor, and asked her to meet a family friend, Gail Bailey, at the Property to investigate the problem. Ms. Moore and Ms. Bailey discovered a broken pipe in the upstairs bathroom of the Property that was leaking water into the home. Plaintiff drove back to Detroit from Albany the next day.

Plaintiff admits that the pipe in the upstairs bathroom broke because of freezing water. Plaintiff stated that, before leaving for Albany, she had set the thermostat in the house to between 65 and 68 degrees. According to Plaintiff's DTE Energy account, electrical service to the Property was disconnected due to nonpayment on December 2, 2010.Even though the electricity was off, gas service was not disconnected and was still running to the home. Plaintiff testified that a furnace malfunction, apparently unrelated to the cutoff of electrical services, caused the temperature in the home to drop.

Plaintiff testified that she attempted to inform Defendant of her mother's death by telephone on January 23, 2008. But because Plaintiff was not the representative for her mother's estate at that time, Defendant "could not accept the information[.]" (Smith Dep. 51.) Plaintiff relied on her sister,

4

Cecile Barnhill, who was the personal representative of her mother's estate at that time, to follow up on the insurance issue. However, the named insured on the insurance policy was not changed.

Ms. Barnhill was later removed as personal representative for Mary Fitz's estate, and Plaintiff was appointed as the personal representative of the estate on August 26, 2010. Nevertheless, after she was appointed as the personal representative in August 2010, Plaintiff never sought to change the named insured on the homeowner's insurance policy for the Property.

## II.  LEGAL STANDARD

Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. "Summary judgment is warranted only when the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Wallace v. Midwest Financial & Mortg. Services, Inc.*, 714 F.3d 414, 418 (6th Cir. 2013). In determining a Rule 56 motion, the "primary inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* (internal quotation marks omitted). "The reviewing court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Crouch v. Honeywell Intern., Inc.*, 720 F.3d 333, 338 (6th Cir. 2013). The non-moving party must present some evidence showing a genuine issue of material fact, or "evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Id.*

## III.  ANALYSIS

Under Michigan law, the interpretation of an insurance contract is a question of law. *Rednour v. Hastings Mut. Ins. Co.*, 468 Mich. 241, 243 (2003). "An insurance contract should be read as a whole, with meaning given to all terms. A clear and unambiguous contractual provision

is to be enforced as written." *Dancey v. Travelers Property Cas. Co.*, 288 Mich. App. 1, 8 (2010) (citation omitted). The Michigan Supreme Court has set forth the following principles to guide courts' interpretations of insurance contracts:

> First, an insurance contract must be enforced in accordance with its terms. A court must not hold an insurance company liable for a risk that it did not assume. Second, a court should not create ambiguity in an insurance policy where the terms of the contract are clear and precise. Thus, the terms of a contract must be enforced as written where there is no ambiguity.
>
> While we construe the contract in favor of the insured if an ambiguity is found, this does not mean that the plain meaning of a word or phrase should be perverted, or that a word or phrase, the meaning of which is specific and well recognized, should be given some alien construction merely for the purpose of benefitting an insured. . . .

*Henderson v. State Farm Fire and Cas. Co.*, 460 Mich. 348, 354 (1999) (citations omitted).

Defendant argues that it owes no coverage for the claim at issue because Plaintiff was not a named insured under the insurance policy. The insurance policy identifies the named insured as Plaintiff's mother, Mary Fitz, and defines "you" and "your" for purposes of the insurance policy as "the person named on the Policy Declarations as the insured and that person's resident spouse." (Def.'s Mot. for Summ. J., Ex. A, Insurance Policy Declaration ("Policy Dec.") at 23.) The insurance policy further defines the "residence premises" as "the dwelling, other structures and land located at the address stated on the Policy Declarations[,]" and "the part of any other premises, other structures and grounds used by you as a residence." (Policy Dec. 24.) Defendant contends that, because Plaintiff is not included under the policy definition for "you" or "your," she cannot recover for any damages to the "residence premises" under the insurance policy.

In support of its argument, Defendant relies on *McGrath v. Allstate Insurance Co.*, 290 Mich.

App. 434 (2010). In *McGrath*, the Michigan Court of Appeals found that a house that had suffered water damage due to a frozen pipe was not a "dwelling" for purposes of the insurance policy at issue. *Id*. at 440. In that case, the record reflected that one person had visited the house for a single night around Thanksgiving 2005, "but no one else visited the property during the winter of 2005-2006." *Id*. at 437. The water damage in that case was not discovered until May of 2006. *Id*.

The argument presented in *McGrath* is different from the argument presented by Defendant in this case. Here, Defendant does not rely on the definition of "dwelling" in the insurance policy, but rather on the definition of "you" and "your" in the policy. Furthermore, while Plaintiff admits that she frequently visited her daughter in Albany, New York, it is not clear in this case that the Property was unoccupied for several months before discovery of the water damage, like the home in *McGrath*.

By focusing on the words "you" and "your" in the insurance policy, Defendant's argument improperly narrows the scope of the policy. Under Defendant's argument, the insurance policy only covers Mary Fitz and her spouse, and excludes from coverage all other persons. However, the insurance policy clearly includes other family members who were living with Mary Fitz. The policy defines an "insured person" as the named insured and, "if a resident of your household . . . any relative . . . ." (Policy Dec. 23.) The policy further defined "insured premises" as, in part, "any part of a premises not owned by an insured person but where an insured person is temporarily living . . . ." (Policy Dec. 24.) Thus, as long as the policy was effective, Plaintiff, as the daughter of the named insured who was "temporarily living" at the insured premises, was covered under the policy.

Nevertheless, when the water damage that comprises the claim at issue occurred in December 2010, the insurance policy was no longer operative due to a change in occupancy of the Property.

7

Defendant properly denied coverage because Plaintiff failed to inform Defendant of "any change in . . . use or occupancy of the residence premises." (Insurance Dec. 24.) The death of the named insured, Mary Fitz, was a material change in the use or occupancy of the Property, and Plaintiff's failure to inform Defendant of this change, particularly after she was appointed as the personal representative of Mary Fitz in August 2010, is a sufficient basis for denial of coverage. *See McGrath*, 290 Mich. App. at 448 (holding that "[t]he failure to notify Allstate about the change in occupancy violated the terms of the contract, and Allstate could properly deny coverage for a loss that occurred more than two years later.").

Plaintiff argues that she informed Defendant of her mother's death in January 2008, and Defendant should therefore be equitably barred from denying coverage due to circumstances related to Mary Fitz's death. However, the record evidence shows only that Plaintiff *attempted* to inform Defendant of her mother's death in January 2008, but that Defendant's agent informed Plaintiff that "[t]hey could not accept the information from [Plaintiff] because [she] was not the personal representative." (Smith Dep. 51.) Plaintiff testified that she "depended on [Mary Fitz's personal representative] Cecile Barnhill to follow-up" on the insurance issue. (Smith Dep. 52.) However, Plaintiff has not submitted any admissible evidence showing that Barnhill ever contacted Defendant to change the named insured on the policy.

In her supplemental briefing, Plaintiff relies on a redacted adjuster note.[1] The note is unreadable by the Court, but Plaintiff asserts in her supplemental briefing that the note, dated January 25, 2011, states that "Ms. Barnhill phoned, she advised she did speak with agency after her

---

[1]The adjuster note Plaintiff relies on was redacted by Defendant's counsel, but Plaintiff's counsel stated at the August 15, 2013 hearing that she could read the redacted information when she held the adjuster notes in front of a light.

8

[sic] ms. Fitz's death . . . ." Plaintiff argues that this note evidences that Defendant was aware of Mary Fitz's death prior to the December 2010 incident.

The "evidence" relied on by Plaintiff in her supplemental briefing does not preclude summary judgment. To establish a genuine issue of material fact, the party opposing entry of summary judgment must "produce *admissible* evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B) (emphasis added). The "evidence" Plaintiff offers is a redacted adjuster note, which is not decipherable by the Court, nor would it be decipherable by a reasonable jury. While Plaintiff asserts that the notes were improperly redacted, Plaintiff has not filed a motion to compel discovery of the redacted notes. Plaintiff has also not requested that consideration of Defendant's motion be deferred while Plaintiff seeks further discovery of the adjuster notes, pursuant to Rule 56(d). Plaintiff instead attempts to establish a material fact using redacted discovery that would be inadmissible at trial. The Federal Rules of Civil Procedure preclude consideration of such evidence on a motion for summary judgment.

When Plaintiff became the personal representative of her mother's estate on August 23, 2010, several months prior to the December 2010 incident, she indisputably knew, as a resident of the Woodingham property where she "always received mail" (Smith Dep. 53), that Mary Fitz was still the named insured on the property. Plaintiff would have received the Homeowners Insurance Renewal Offer at the Woodingham property address, which was addressed to "Mary E Fitz." Plaintiff also indisputably knew that, as her mother's personal representative, she now had the authority to inform Defendant of Mary Fitz's death. However, Plaintiff never contacted Defendant about the death of her mother.

Plaintiff indisputably knew that the named insured on the Property needed to be changed

9

after the death of her mother. She admits she attempted to change the named insured in January 2008, but could not do so. Plaintiff later had the authority to change the named insured on the property when she was appointed the personal representative of her mother's estate, but never contacted Defendant. Because neither Plaintiff nor any other person with proper authority ever informed Defendant of Mary Fitz's death, Defendant is not barred from denying coverage due to Mary Fitz's death.

Plaintiff argues that summary judgment is improper because she was a third-party beneficiary under the insurance policy. *See Cenovski, Inc. v. Michigan Mut. Ins. Co.*, 200 Mich. App. 725, 729 (1993) (holding that, where "the promise to pay [was] not limited to a loss suffered or liability incurred by a named insured[,] . . . a reasonable factfinder could determine that Michigan Mutual's promise to pay had been made for Cenovski's benefit, and, consequently, Cenovski ha[d] the right to enforce the promise Michigan Mutual made to [the named insured]."). As explained *supra*, Plaintiff was included under the definition of "insured person" in the policy. However, because the policy was no longer effective as of December 2010, Plaintiff's status as a third-party beneficiary does not provide a basis for recovery under the insurance policy.

Because Defendant properly denied coverage based on Plaintiff's failure to inform Defendant about the change in occupancy of the Property, the Court will not consider Defendant's alternative bases for summary judgment.

## IV.  CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendant's motion and **DISMISS** the action **WITH PREJUDICE**.

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  August 29, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 29, 2013.

s/Deborah Tofil
Case Manager